IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

RUTH ELIZABETH MCMURRIN

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-0118

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION ................................. 1

II.   PRINCIPLES OF REVIEW ........................... 2

III.  FACTUAL AND PROCEDURAL BACKGROUND ............. 4

IV.  CONCLUSIONS OF LAW ............................ 5
    A.   ALJ's Disability Determination ....................... 5
    B.   Objections Raised By Claimant ....................... 7
        1.   Grid 202.00(d) and Illiteracy ..................... 8
        2.   RFC and Hypothetical Question .................. 13

V.    CONCLUSION .................................. 17

VI.  ORDER ........................................ 18

I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Ruth Elizabeth McMurrin on November 2, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI

supplemental security income ("SSI") benefits.[1] McMurrin asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, McMurrin requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012);

---

[1] On December 21, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

*see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported

a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTUAL AND PROCEDURAL BACKGROUND

McMurrin was born in 1963. At the administrative hearing held in November 2013, McMurrin testified she attended school through the eleventh grade, but did not complete the eleventh grade. She also stated she has not earned a GED.[2] In the past, McMurrin worked as a school bus attendant, cashier, and in a variety of temporary jobs.

McMurrin filed her application for SSI benefits on September 27, 2011, alleging disability due to diabetes and anxiety. She alleged she became disabled on October 10, 2003.[3] Her application was denied upon initial review, and on reconsideration. On November 6, 2013, McMurrin appeared via video conference with her attorney before Administrative Law Judge ("ALJ") Tela L. Gatewood for an administrative hearing. In a decision dated September 2, 2014, the ALJ denied McMurrin's claim. The ALJ determined McMurrin was not disabled and not entitled to SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. McMurrin appealed the ALJ's decision. On August 31, 2015, the Appeals Council denied McMurrin's request for review. Consequently, the ALJ's September 2, 2014 decision was adopted as the Commissioner's final decision.

On November 2, 2015, McMurrin filed the instant action for judicial review. A briefing schedule was entered on December 31, 2015. On March 24, 2016, McMurrin filed a brief arguing that there is not substantial evidence in the record to support the ALJ's

---

[2] In a Social Security Administration Disability Report from October 2011, it states McMurrin completed the twelfth grade, and was enrolled in special education classes. *See* Administrative Record at 388-89.

[3] SSI benefits, however, are not payable prior to the month in which the application was filed. *See* 20 C.F.R. § 416.335. Therefore, the relevant time period in this case began on September 16, 2011, the date McMurrin protectively filed her application for SSI benefits.

finding that she is not disabled and that she is functionally capable of performing other work that exists in significant numbers in the national economy. On April 29, 2016, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. McMurrin filed a reply brief on May 9, 2016.

Additionally, on March 3, 2016, both parties together filed a joint statement of facts addressing McMurrin's background, the case's procedural history, testimony from the administrative hearing, and McMurrin's medical history. *See* docket number 12. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of the legal issues presented.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined McMurrin was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the

evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians

and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined McMurrin had not engaged in substantial gainful activity since September 16, 2011. At the second step, the ALJ concluded from the medical evidence McMurrin had the following severe impairments: diabetes mellitus, coronary artery disease, and obesity. At the third step, the ALJ found McMurrin did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined McMurrin's RFC as follows:

> [McMurrin] has the residual functional capacity to perform a range of light work[.] . . . [McMurrin] can lift and/or carry and push and/or pull twenty pounds occasionally, ten pounds frequently. She can stand and/or walk, with normal breaks, for a total of six hours in a workday. She can sit, with normal breaks, for a total of six hours in a workday. [McMurrin] cannot climb ladders, ropes, or scaffolds. She cannot work at unprotected heights or around hazards. [She] cannot work in temperature extremes. She can perform overhead work occasionally. She cannot work in environments with concentrated exposure to fumes, noxious odors, dust, gases, smoke, and chemicals.

(Administrative Record at 57.) Also at the fourth step, the ALJ determined McMurrin has no past relevant work. At the fifth step, the ALJ determined based on her age, education, previous work experience, and RFC, McMurrin could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded McMurrin was not disabled.

### B. Objections Raised By Claimant

McMurrin argues the ALJ erred in two respects. First, McMurrin argues the ALJ erred by failing to consider and apply Grid 202.00(d) which would mandate a finding of

7

disability due to being illiterate. Second, McMurrin argues both the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed and not supported by substantial evidence.

### 1. Grid 202.00(d) and Illiteracy

McMurrin argues the ALJ erred by not applying Grid 202.00(d) and finding her disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 202.00(d) provides in pertinent part:

> where age, though not advanced, is a factor which significantly limits vocational adaptability (i.e., closely approaching advanced age, 50-54) and an individual's vocational scope is further significantly limited by illiteracy or inability to communicate in English, a finding of disabled is warranted.

*Id.* McMurrin maintains the ALJ should have determined her to be disabled under 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 202.00(d) because by 2013 she was closely approaching advanced age (50 years old), limited to performing light work, and significantly limited by being illiterate.

In support of her argument, McMurrin relies on the opinions of Dr. Roger E. Mraz, Ph.D., a consultative examining psychologist who provided Disability Determination Services with a psychological report for McMurrin. In his report, Dr. Mraz noted McMurrin "began receiving special education in the 7th grade, which continued up until she dropped out of school after finishing the 11th grade."[4] Upon examination, Dr. Mraz found:

> [McMurrin] had a moderate problem with working memory, indicating that she has a difficult time focusing her attention, concentrating, and holding information in memory long enough to carry out complex or lengthy instructions. She was unable to repeat back a sentence accurately, which again suggests problems with attention and concentration. However, she was able to remember and carry out four simple instructions at a reasonable pace. Visual motor integration

---

[4] Administrative Record at 1064.

8

> skills were adequate, and writing and math skills were at a functional adult level. She could read a 6th grade passage with adequate word recognition, but could not demonstrate satisfactory comprehension, even after reading the passage three times.

(Administrative Record at 1065.) Dr. Mraz also noted McMurrin informed him that her "primary reason for not working at the present time is due to her physical problems."[5] Dr. Mraz did not diagnose McMurrin with any mental health problems or illiteracy, but stated she lacks "functional adult reading skills."

The Commissioner asserts Dr. Mraz's opinion is not the only evidence in the record regarding McMurrin's literacy. Specifically, the Commissioner argues:

> Although plaintiff selectively cites evidence she argues shows her illiteracy, a closer look at the other record evidence quickly disproves her claim. . . . For example, when plaintiff applied for benefits, she reported that she could read, understand, and write more than her name in English (Tr. 359). In addition, in both April and September 2011, plaintiff notably did not include illiteracy or any similar impairment among the conditions she alleged limited her ability to work (Tr. 360, 388). . . . Plaintiff also repeatedly reported she was able to pay bills, handle a savings account, and use a checkbook or money orders (Tr. 379, 411, 436). And plaintiff's inclusion of her E-Mail address with her signature on one of the forms shows that she is able to use E-Mail (Tr. 432). Furthermore, [Dr.] Mraz . . . reported that plaintiff had difficulty with reading comprehension, but was able to read a sixth grade passage with adequate word recognition and that her writing skills were at a functional adult level (Tr. 1065).

---

[5] Administrative Record at 1065.

9

Commissioner's Brief (docket number 14) at 8-9. The Commissioner concludes "the record clearly shows that plaintiff is not illiterate and, consequently, that plaintiff's argument that the Grid rules directed a finding she was disabled is without merit."[6]

The ALJ considered and addressed Dr. Mraz's opinions at several points in her decision. For example, in discussing Dr. Mraz's opinions, the ALJ noted Dr. Mraz determined:

> [McMurrin] appeared to have some problems with attention and concentration, but she could remember and carry out a four-step instruction and carry it out at a reasonable pace. She read a passage adequately, although comprehension was unsatisfactory. Mathematics and written language skills were functional. [McMurrin] denied any treatment for anxiety or depression, but she reported learning problems in school. Judgment appeared adequate. There was no diagnosis. The estimated global assessment of functioning ("GAF") score was 65. A score between 61 and 70, inclusive, indicates the presence of some mild symptoms or of some difficulty in social, occupational, or school functioning, but generally functioning pretty well and having some meaningful interpersonal relationships[.] . . .

(Administrative Record at 55.) In her decision, the ALJ also considered McMurrin's educational experience and determined McMurrin "has at least a 'limited' education, and she is able to communicate in English."[7] The ALJ further explained:

> On filing the applications, [McMurrin] reported she completed the twelfth grade (Exhibits 2E and 6E). At the hearing, and to the consultative psychologist [(Dr. Mraz)], she reported leaving school during and/or after finishing the eleventh grade and lacking a GED. [McMurrin's] academic record, although hard to read, suggested she failed the twelfth grade, and then withdrew that fall, rather than repeating twelfth grade (Exhibit

---

[6] Commissioner's Brief (docket number 14) at 9.

[7] Administrative Record at 63.

10

> 25E, p. 2). Whichever is true, the results do not change. Medical-Vocational Rule 202.20 (before age 50, and having a high school education or equivalent) and Rule 202.13 (since attaining age 50, and having a high school education or equivalent), as well as Medical-Vocational Rule 201.17 (before age 50 and having less than a high school education) and Rule 202.10 (since attaining age 50 and having less than a high school education), Table No. 2, also suggest a finding of "not disabled."

(Administrative Record at 63.)

This case presents an interesting issue. The ALJ clearly considered and addressed both McMurrin's education history and Dr. Mraz's opinions. The ALJ acknowledged McMurrin's learning problems and noted her difficulty with reading comprehension, but did not make an explicit finding whether McMurrin is illiterate. Implicitly, the ALJ determined McMurrin was not illiterate, but found her to have a "limited" education. The ALJ applied the Grid Rules for an individual with a "limited" education, and correctly determined she should not be found disabled under the applicable Grid Rules.[8] Contrary to the ALJ's determinations, McMurrin claims that she is illiterate and relies primarily on Dr. Mraz's conclusion that she lacks functional adult reading skills to support her claim. The Commissioner counters McMurrin's claim of illiteracy by pointing out: (1) she never claimed to be illiterate in her applications for disability; (2) never claimed illiteracy in her functional reports submitted to the Social Security Administration; and (3) Dr. Mraz, contrary to his finding that she lacked functional adult readings skills, determined her writing and math skills were at a functional adult level.

In *Howard v. Massanari*, 255 F.3d 577 (8th Cir. 2001), the Eighth Circuit Court of Appeals addressed a similar situation. The claimant in *Howard* asserted she was illiterate. *Id.* at 584. The Eighth Circuit noted if the claimant's claim of illiteracy was true, she would be considered disabled under the Grids. *Id.* The ALJ in *Howard*, rejected

---

[8] *See* Administrative Record at 63, section 7.

11

the claimant's claim of illiteracy. 255 F.3d at 584. However, the Eighth Circuit found evidence of both literacy and illiteracy in the record. *Id.* The Eighth Circuit pointed out that one intelligence test in the record placed the claimant at a second-grade reading level. Furthermore, the record provided the claimant only completed the 9th grade and had low or failing grades in school. Reading was an "especially difficult" subject for the claimant. Additionally, the claimant was enrolled in reading classes at the time she applied for disability benefits. *Id.*

The Eighth Circuit also found several facts in the record that suggested the claimant was not illiterate and capable of reading. For example, the claimant passed a driver's test. The Eighth Circuit also stated "[a]lthough some 9th graders may be functionally illiterate, the more common inference is that persons with nine years of public education possess some ability to read. *Cf.* 20 C.F.R. § 404.1546(b)(1) (noting that 'generally, an illiterate person has had little or no formal schooling.')." *Howard*, 255 F.3d at 584. Lastly, although a doctor found the claimant to have borderline intellectual functioning, the doctor made no mention that the claimant was illiterate. *Id.*

In balancing this evidence, the Eighth Circuit admonished the ALJ for not developing a stronger record on the issue of literacy, but ultimately determined the ALJ's "failure to develop more robust proof of literacy (or illiteracy) is not fatal to the Commissioner's decision." *Howard*, 255 F.3d at 584-85. The Eighth Circuit reasoned "[t]he administrative record contains evidence pointing to [the claimant's] ability to read, and, given our deferential standard of review, . . . we deem the evidence sufficient to support the ALJ's conclusion that [the claimant] is functionally literate." *Id.* at 585.

The record in this case provides: (1) McMurrin never claimed to be illiterate in her applications for disability benefits or at the administrative hearing; (2) Dr. Mraz did not opine McMurrin is illiterate; (3) Dr. Mraz found McMurrin lacked functional adult reading skills, but also found she had functional adult writing and math skills; and (4) McMurrin

completed at least the 11th grade. In her decision, the ALJ also addressed McMurrin's educational history as it relates to the Grids, and properly determined that even with a "limited" education, she would not be found disabled under the Grids. Taking all of this information into consideration, the Court follows *Howard*, and finds that while the ALJ could have developed a stronger record on this issue, given the deferential standard of review afforded to an ALJ, the evidence in this case is sufficient to support the ALJ's implicit conclusion that McMurrin is functionally literate. 255 F.3d at 584-85. Accordingly, the Court finds McMurrin's argument with regard to the Grids and illiteracy is without merit.

### 2. *RFC and Hypothetical Question*

McMurrin argues that both the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed. Specifically, McMurrin argues the ALJ's RFC assessment and hypothetical questions to the vocational expert are incomplete because they do not properly account for all of her impairments and functional limitations. Thus, McMurrin contends the ALJ's RFC assessment and hypothetical questions are not supported by substantial evidence in the record. McMurrin maintains this matter should be remanded for a new RFC determination based on a fully and fairly developed record, and to allow the ALJ to provide the vocational expert with a proper and complete hypothetical question.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of

treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In her decision, the ALJ thoroughly addressed and considered McMurrin's medical history and treatment for her complaints.[9] For example, the ALJ thoroughly addressed McMurrin's difficulties with diabetes mellitus which were controlled when she was compliant with medication.[10] The ALJ also thoroughly addressed her history of moderate coronary artery disease which was successfully treated and apparently resolved by March 2012, as "the record documents no further cardiac abnormalities."[11] The ALJ also addressed and considered the impact of McMurrin's obesity when determining her RFC.[12] Additionally, the ALJ considered and addressed the opinions of both examining consultative doctors and non-examining consultative doctors in determining McMurrin's RFC.[13]

The ALJ also properly considered and thoroughly discussed McMurrin's subjective allegations of disability in making her overall disability determination, including determining McMurrin's RFC.[14] For example, the ALJ pointed out inconsistencies between McMurrin's testimony at the administrative hearing and evidence in the record.[15] The ALJ also considered McMurrin's lack of a consistent work history, noncompliance

---

[9] See Administrative Record at 59-60; 62-63. (providing a thorough discussion of McMurrin's overall medical history and treatment).

[10] Administrative Record at 59.

[11] Id. at 59-60.

[12] Id. at 60.

[13] Id. at 62-63.

[14] Id. at 60-61. (providing a thorough discussion of McMurrin's subjective allegations of disability).

[15] Id. at 60-61.

15

with medications and recommendations from her treating medical sources, and inconsistencies between allegations of disability and her activities of daily living.[16]

McMurrin also claims her RFC determination is flawed because the Appeals Council failed to consider additional evidence submitted after the ALJ's decision. In particular, McMurrin's treating physician, Dr. Jason Ellis, D.O., limited her to less than sedentary work in April 2015, seven months after the ALJ's decision in this case.[17] Contrary to McMurrin's assertion, the Appeals Council did review Dr. Ellis' opinion. Specifically, the Appeals Council stated:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> We also looked at Eastern Iowa Health Center records dated September 26, 2014 through March 12, 2015; and a medical source statement from Jason Ellis, D.O., dated April 6, 2015. The Administrative Law Judge decided your case through September 2, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 2, 2014.
>
> If you want us to consider whether you were disabled after September 2, 2014, you need to apply again. . . .

(Administrative Record at 3). The Court finds no merit to McMurrin's argument that the Appeals Council failed to consider the additional evidence provided by Dr. Ellis.

---

[16] Administrative Record at 61.

[17] *See id.* at 18-20 (physical RFC for McMurrin filled out by Dr. Jason Ellis, D.O.).

Therefore, having reviewed the entire record, the Court finds the ALJ properly considered McMurrin's medical records, observations of treating physicians, and McMurrin's own description of her limitations in making the ALJ's RFC assessment for McMurrin.[18] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes McMurrin's assertion that the ALJ's RFC assessment is flawed is without merit.

Similarly, having reviewed the entire record, the Court, again, finds that the ALJ thoroughly considered and discussed both the medical evidence and McMurrin's testimony in determining McMurrin's impairments and functional limitations.[19] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds McMurrin's argument with regard to the Grids and illiteracy is without merit. The Court also finds the ALJ considered the medical evidence as a whole,

---

[18] *See* Administrative Record at 59-63 (providing a thorough discussion of the relevant evidence for making a proper RFC determination).

[19] *See id.*

17

and made a proper RFC determination based on a fully and fairly developed record. The ALJ's hypothetical questions to the vocational expert were also sufficient because they properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 4th day of August, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA